UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ALBERT B. BROWN, JR.,            )
                                 )
                Plaintiff,       )
                                 )
        v.                       )    No.  4:08CV483 CAS
                                 )                  (FRB)
MICHAEL J. ASTRUE, Commissioner  )
of Social Security,              )
                                 )
                Defendant.       )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal for review of an adverse ruling by the Social Security Administration. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.

**I. Procedural History**

On October 5, 2006, plaintiff Albert B. Brown, Jr., filed an application for Disability Insurance Benefits (DIB) pursuant to Title II, 42 U.S.C. §§ 401, et seq., in which he claimed that he became disabled and unable to work on August 1, 2005. (Tr. 120-25.) On initial consideration, the Social Security Administration denied plaintiff's application for benefits. (Tr. 78-79, 80-84.) On September 25, 2007, a hearing was held before an Administrative Law Judge (ALJ) at which plaintiff testified. (Tr. 68-77.) A supplemental hearing was scheduled for November 14, 2007 (Tr. 108-11); however, plaintiff waived his right to this hearing stating that the first hearing was sufficient to establish his disability

(Tr. 119). On February 20, 2008, the ALJ issued a decision denying plaintiff's claim for benefits. (Tr. 38-51.) On April 2, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 2-5.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

At the hearing on September 25, 2007, plaintiff testified in response to questions posed by the ALJ.

At the time of the hearing, plaintiff was forty-three years of age. (Tr. 71.) Plaintiff stands five-feet, eleven inches tall and weighs 316 pounds. (Tr. 73.) Plaintiff completed high school and did not receive any formal education thereafter. (Tr. 71.)

In his Vocational Report, plaintiff reported that from July 1986 to October 1997, he worked at A T & T performing computer installation and maintenance. From October 1991 to March 1997, plaintiff worked as an analyst/technician at A T & T. From March 1997 to January 2003, plaintiff worked at Xerox performing installation and maintenance. From January 2003 to December 2004, plaintiff worked at H & R Block performing computer installation and maintenance. (Tr. 181.) The weight lifted by plaintiff throughout these jobs ranged from twenty-five to 100 pounds or more. (Tr. 142-47.)

Plaintiff testified that he left his employment in December 2004 because he was going to take a position in another company but then that company imposed a hiring freeze thereby

leaving him without a job. (Tr. 72-73.) Plaintiff testified that he has not worked and has not sought employment since that time. (Tr. 73, 75.) Plaintiff testified that he collected unemployment insurance benefits from December 2004 to August 2005. (Tr. 73.) Plaintiff testified that he currently has no health insurance. (Tr. 74.)

Plaintiff testified that he injured his back in August 2005 as a result of a fall. (Tr. 73.) Plaintiff testified that he has constant pain in his back and that the pain radiates from his lower back down his right leg. Plaintiff testified that the pain worsens with simple activities such as sitting or standing too long, or lifting small objects. (Tr. 72.) Plaintiff testified that he has had no medical "work-up" with his back other than x-rays. (Tr. 73.) Plaintiff testified that the x-ray reports do not fully disclose all of his back conditions. (Tr. 75.)

Plaintiff testified that he has difficulty sleeping because of his pain as well as on account of his weight, and that he is able to sleep only three hours a night. (Tr. 72.) Plaintiff testified that he has received no medical treatment during the past year for either his back condition or sleep difficulties. (Tr. 73-74.) Plaintiff testified that his memory and concentration have recently been affected by his condition. (Tr. 72.)

Plaintiff testified that his excess weight causes him to have difficulty with his legs and knees. (Tr. 73.)

Plaintiff testified that he also has high blood pressure but that he cannot afford medication for the condition. (Tr. 74.)

Plaintiff testified that he went to a free clinic on one occasion but did not stay because of the number of people in line and he could not sit that long. Plaintiff testified that he had not tried to visit any clinics in St. Louis County where he resides. (Tr. 74.)

### III.  Medical Records

On November 16, 2006, plaintiff underwent a consultative medical evaluation at Medex for Disability Determinations. (Tr. 257-63.) Plaintiff complained to Dr. Elbert H. Cason of lower back pain, high blood pressure, sleep apnea, and obesity. With respect to his back pain, plaintiff reported that he experiences pain across the lower back that radiates down the back of his right leg. Plaintiff reported that he never received treatment or took medication for the condition and that over-the-counter medication provided little relief. Plaintiff reported that he can walk one-half of a block, can stand or sit for ten minutes, and can lift up to eight pounds. Plaintiff could bend slightly. With respect to his blood pressure, plaintiff reported that he has known of the condition for several years but never took medication for it. Plaintiff's current blood pressure was measured to be 189/119. Plaintiff reported never having a heart attack or stroke and that he experienced no headaches. Dr. Cason advised plaintiff to see a doctor and to begin medication before he has a stroke. With respect to sleep apnea, plaintiff reported that he has had the condition for several years but does not take medication or use a CPAP machine. Plaintiff reported that he has never had a sleep

work-up at a hospital.  As to plaintiff's obesity, plaintiff reported that he has been heavy all of his life.  Dr. Cason noted plaintiff to currently weigh 368 pounds.  (Tr. 257-58.)  As to his daily activities, plaintiff reported to Dr. Cason that he lives with his wife.  Plaintiff performs no household chores.  Plaintiff drives a car and gets out of the house about once a week.  Plaintiff reported that he takes his daughter shopping and that she does the shopping.  Plaintiff reported that he takes short naps every day.  (Tr. 258.)  Physical examination showed plaintiff to have decreased range of motion about the back with paravertebral lumbar area tenderness.  Straight leg raising on the right produced low back pain at forty-five degrees.  Plaintiff had decreased range of motion about the right hip with tenderness over the right hip area.  Knee motions were decreased, which Dr. Cason attributed to obesity.  Plaintiff could heel and toe stand and could partially squat by holding onto the edge of a desk.  Plaintiff walked with a wide stance and short steps, but no evidence of limp was present.  Nor did plaintiff require the use of an assistive device for walking.  Lower extremity muscle strength was measured to be 4/5.  Upper extremity muscle strength was normal.  Plaintiff's grip strengths were normal.  No muscle atrophy or spasms were present.  (Tr. 259, 262-63.)  Upon conclusion of this examination, Dr. Cason diagnosed plaintiff with low back pain with radiation down the right posterior thigh; unregulated high blood pressure; sleep apnea caused by morbid obesity; and morbid obesity.  (Tr. 259-60.)

X-rays taken of plaintiff's lumbar spine on November 26,

2006,[1] showed grade 1 spondylolisthesis[2] of L4 on 5; slight retrolisthesis[3] of L5 on S1; mild degenerative disc disease of L4-5 and L5-S1; and mild levoscoliosis.[4]  (Tr. 280-81.)

On December 7, 2006, J.M. Boone, a medical consultant with Disability Determinations, completed a Physical Residual Functional Capacity Assessment wherein s/he opined that plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; could stand and/or walk about six hours in an eight-hour work day; could sit about six hours in an eight-hour work day; and was unlimited in his ability to push or pull with hand and/or foot controls.  Consultant Boone also opined that plaintiff was frequently limited in his ability to climb ramps and stairs and in his ability to kneel; and was occasionally limited in his ability to climb ladders, ropes and scaffolds and in his ability to balance, stoop, crouch, and crawl.  Consultant Boone opined that plaintiff had no manipulative, visual, communicative, or environmental limitations.  (Tr. 264-69.)

On January 28, 2008, the ALJ informed plaintiff that he

_____

[1]These x-rays were taken at the request of Disability Determinations.

[2]"Spondylolisthesis:  Forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum."  Stedman's Medical Dictionary 1656 (26th ed. 1995).

[3]"Retrolisthesis:  Backward slippage of one vertebrae onto the vertebrae immediately below."  Mosby's Dictionary of Complementary and Alternative Medicine (2005), available at http://medical-dictionary.thefreedictionary.com/Retrolisthesis.

[4]Levoscoliosis is an abnormal curvature of the spine tending toward the left.  See Stedman's Medical Dictionary 962, 1584 (26th ed. 1995).

had requested that a second consultative examination be scheduled for proper evaluation of plaintiff's claim (Tr. 236), and such examination was scheduled for February 18, 2008 (Tr. 234). On February 5, 2008, plaintiff informed the Social Security Administration that he would not participate in this second consultative examination inasmuch as the record already contained sufficient evidence upon which a finding of disability could be made. (Tr. 231-32.)

## IV.  The ALJ's Decision

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act as of August 1, 2005, and would continue to meet them through December 31, 2009. The ALJ also found that plaintiff had not engaged in substantial gainful activity since August 1, 2005. The ALJ found plaintiff's alleged sleep apnea not to be a medically determinable impairment. The ALJ also found plaintiff's hypertension, obesity, and mild or slight changes in the lumbar spine not to be severe impairments having a duration of twelve months and thus that plaintiff was not under a disability. The ALJ nevertheless determined that even if severe, such impairments, whether considered singly or in combination, did not meet or medically equal any impairment listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found plaintiff's complaints of disabling pain not to be credible. The ALJ further determined, again assuming plaintiff's impairments to be severe, that plaintiff had the residual functional capacity (RFC) to perform the full range of light work. Again assuming

_arguendo_ that plaintiff's impairments were severe, the ALJ determined plaintiff unable to perform his past relevant work. Considering plaintiff's age, education, work experience, and RFC, the ALJ determined that Medical Vocational Rules 202.20-22 and 201.27-29 would supporting a finding that plaintiff was able to perform other work in the economy. The ALJ thus determined plaintiff not to be under a disability from August 1, 2005, through the date of the decision. (Tr. 41-51.)

## V. Discussion

To be eligible for Social Security Disability Insurance Benefits under the Social Security Act, plaintiff must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the

Commissioner engages in a five-step evaluation process.  <u>See</u> 20 C.F.R. § 404.1520; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Estes v. Barnhart</u>, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1147 (8th Cir. 2001).

To determine whether the Commissioner's decision is supported by substantial evidence, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). A Commissioner's decision may not be reversed merely because substantial evidence also exists that would support a contrary outcome. Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

Plaintiff first claims that he is entitled to an

automatic reversal of the Commissioner's decision and an outright award of benefits inasmuch as the Commissioner failed to timely file his Answer to plaintiff's Complaint and, further, nevertheless admitted in his untimely Answer to plaintiff's claims of error as alleged in the Complaint. Alternatively, plaintiff contends that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, plaintiff argues that the ALJ ignored evidence which corroborated his complaints of disabling pain, including evidence obtained from the consulting examiner and a document entitled "Proof of Claimant Disability Document" prepared by the plaintiff in which he summarized the signs, symptoms and medical evidence of his impairments. Plaintiff also argues that the ALJ failed to call upon any medical resource to determine whether his physical impairments could produce pain and other symptoms. Plaintiff also contends that the ALJ erred in finding his complaints not to be credible. In addition, plaintiff argues that the ALJ failed to properly consider his impairment of morbid obesity, its effect upon his back condition and ability to ambulate, and the extent to which such condition supports a finding that plaintiff's impairments meet a Listing. Plaintiff also contends that the ALJ erred in determining plaintiff's RFC inasmuch as the ALJ did not properly consider plaintiff's complaints of pain. Finally, plaintiff argues that the ALJ erred in his determination that plaintiff could perform other work in the national economy inasmuch as he failed to elicit testimony from a vocational expert regarding his significant non-exertional

impairments, and specifically, pain and obesity.

A.   Timeliness and Substance of Answer

As an initial matter, plaintiff argues that the Commissioner's failure to timely answer the Complaint entitles him to have the Commissioner's adverse decision reversed and this cause remanded for an award of benefits.   For the following reasons, plaintiff's argument is without merit.

Rule 12(a)(2) of the Federal Rules of Civil Procedure provides that "the United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint . . . within 60 days after service on the United States attorney."   A review of the file in this cause shows that the United States Attorney for the Eastern District of Missouri was served with process on May 30, 2008.   As such, under Fed. R. Civ. P. 12(a)(2), defendant Commissioner's Answer in this cause was due to be filed within sixty days thereafter, that is, not later than July 29, 2008.   Because defendant answered plaintiff's Complaint on July 29, 2008 (see Docket Nos. 12, 13), plaintiff's assertion that the Answer was untimely filed is without merit.

Plaintiff also contends that he is entitled to judgment on his claims inasmuch as in defendant's Answer, the Commissioner "admits" to the allegations raised in paragraphs 1, 2, 3, 5, 7, and 8 of plaintiff's Complaint.   Plaintiff argues that because these paragraphs allege specific and substantive errors made by the ALJ, defendant's admission to such errors entitles him to judgment.

Plaintiff's argument is misplaced.

A review of the Complaint shows plaintiff to have completed a pre-printed, standardized form consisting of eight separately numbered paragraphs. (Docket No. 1.) In paragraph IV, in which plaintiff is prompted to state why the decision of the Commissioner is not based upon substantial evidence, plaintiff refers to an attached letter and document wherein he sets forth his allegations of specific and substantive errors on the part of the ALJ. It is to this attachment which plaintiff contends the defendant made his admissions. A review of the Complaint and Answer together shows, however, that defendant addresses the paragraphs as set out in the pre-printed form, and indeed specifically denies the allegations made in paragraph IV – that paragraph which incorporates the attached letter and document. Because a review of defendant's Answer in conjunction with plaintiff's Complaint shows the Commissioner not to have admitted to substantive errors on the part of the ALJ, plaintiff's request for judgment based on defendant's admissions should be denied.

B.  Sequential Evaluation

Plaintiff claims that the ALJ erred throughout his sequential evaluation of plaintiff's claim of disability, and alleges specific errors throughout such process. For the sake of clarity, the undersigned will review the ALJ's sequential evaluation, step by step, and address plaintiff's claims as they relate to each.

1.   *Step 1 – Substantial Gainful Activity*

At Step 1 of the sequential evaluation, the ALJ found plaintiff not to have engaged in substantial gainful activity since August 1, 2005, the alleged onset date of plaintiff's disability. Plaintiff does not quarrel with this finding.

2.   *Step 2 – Severe Impairment*

At Step 2 of the sequential evaluation, the ALJ decides whether the claimant has a severe impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.[5]  If the claimant's impairment(s) is not severe, then he is not disabled.  In this cause, the ALJ determined none of plaintiff's impairments, whether considered singly or in combination, to be severe.  As such, at Step 2 of the process, the ALJ determined plaintiff not to be disabled.  For the following reasons, the ALJ erred at this step of the analysis.

The sequential evaluation process may only be terminated at Step 2 when an impairment or combination of impairments would have no more than a minimal effect on the claimant's ability to work.  Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996).  Denial of benefits at Step 2 is justified only for those claimants whose

_____

[5]The ability to do most work activities encompasses "the abilities and aptitudes necessary to do most jobs." Williams v. Sullivan, 960 F.2d 86, 88 (8th Cir. 1992).  Examples include physical functions such as walking, sitting, standing, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work situation.  Id. at 88-89.

medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account. Id. While the claimant bears the burden of showing a severe impairment at Step 2, the burden at this step is not great. Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001); see also Gilbert v. Apfel, 175 F.3d 602, 604-05 (8th Cir. 1999) (court to apply "cautious standard" at Step 2 of evaluation process).

In this cause, the ALJ determined that plaintiff's impairments were not severe inasmuch as there existed no objective medical evidence to support a finding that such impairments were severe and, further, because plaintiff's complaints of severe, disabling symptoms were not credible. Although substantial evidence supports the ALJ's adverse credibility determination, a review of the record in its entirety shows the ALJ to have erred in finding the objective evidence to have failed to meet the minimum threshold of establishing a severe impairment.

a.    Credibility Determination

In determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent

history omitted). Although the ALJ may not discount subjective complaints on the sole basis of personal observation, he may disbelieve a claimant's complaints if there are inconsistencies in the evidence as a whole. Id. The "crucial question" is not whether the claimant experiences symptoms, but whether his credible subjective complaints prevent him from performing work. Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003).

Where, as here, a plaintiff contends on judicial review that the ALJ failed to properly consider his subjective complaints, "the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." Masterson v. Barnhart, 363 F.3d 731, 738-39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence. Id. at 738; see also Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, the decision should be upheld. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001); see also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). The determination of a claimant's credibility is for the Commissioner, and not the Court, to make. Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005); Pearsall, 274 F.3d at 1218.

In this cause, the ALJ set out numerous inconsistencies

in the record to support his conclusion that plaintiff's subjective complaints were not credible.  First, the ALJ noted that despite his complaints of sleep apnea, debilitating low back and leg pain, uncontrolled hypertension, and morbid obesity, the plaintiff sought and received no treatment for any of these conditions.  <u>See</u> <u>Wagner v. Astrue</u>, 499 F.3d 842, 853 (8th Cir. 2007) (subjective complaints of pain could be discredited based on evidence that claimant received minimal medical treatment and failed to take pain medication); <u>Gregg</u>, 354 F.3d at 713 (claimant's failure to seek consistent treatment supported adverse credibility determination); <u>Wilson v. Chater</u>, 76 F.3d 238, 241 (8th Cir. 1996) (failure to seek medical treatment for symptoms inconsistent with subjective complaints of pain); <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023-24 (8th Cir. 1994) (failure to seek aggressive medical treatment not suggestive of disabling pain).  The ALJ also noted that plaintiff took no prescribed medication and observed that the lack of strong pain medication was inconsistent with complaints of disabling pain. <u>See Haynes v. Shalala</u>, 26 F.3d 812, 814 (8th Cir. 1994).  The ALJ also noted that diagnostic testing showed only mild changes to the lumbar spine.  <u>See</u> <u>Ramirez v. Barnhart</u>, 292 F.3d 576, 581 (8th Cir. 2002) (in making credibility determination, ALJ may consider objective medical evidence which is contrary to claimant's assertions).  The ALJ noted that many of Dr. Cason's findings upon his physical examination of plaintiff were inconsistent with plaintiff's complaints of disabling pain, and specifically, that plaintiff did not suffer muscle atrophy or spasm, despite his

- 17 -

report of inactivity; exhibited no limp with his gait, despite his complaint that he could put no pressure on his right leg; had no motor, reflex or sensory abnormalities; had 4/5 strength in the lower extremities; had no reported labored breathing related to pain or shortness of breath upon the performance of exertional activities, despite plaintiff's complaints of pain with minimal activity; and had no reported symptoms of sleep deprivation, despite his complaints of sleep disturbance due to pain or apnea. See id. The ALJ also noted that there was no evidence that plaintiff's work activity ceased due to impairment-related limitations. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (significant to credibility determination when a claimant leaves work for reasons other than impairment). Finally, the ALJ noted that, although plaintiff claimed he was unable to afford medication or treatment, there was no evidence that plaintiff was refused treatment or medication for any reason, including insufficient funds; there was no evidence that plaintiff sought the aid of any available public or private programs to help defray the cost of treatment; and there was no evidence that plaintiff sought alternative methods of payment with any treating physicians. Without such evidence, plaintiff's failure to seek treatment for his various impairments is relevant to the credibility determination. Id. (citing Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994)). These reasons to find plaintiff's subjective complaints not to be credible are supported by substantial evidence on the record.

Plaintiff contends that the ALJ improperly relied on plaintiff's failure to seek treatment in his determination to find plaintiff's complaints not to be credible, arguing that there was no evidence that any treatment would improve plaintiff's impairments. Plaintiff's argument is misplaced. Here, the ALJ analyzed the evidence of plaintiff's failure to seek treatment solely to weigh the credibility of his subjective complaints, and not as a basis upon which to deny benefits. This use of evidence of failure to seek treatment, without determining whether any such treatment would restore plaintiff's ability to work, is permissible. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).

A review of the ALJ's decision shows that, in a manner consistent with and as required by Polaski, the ALJ considered plaintiff's subjective complaints on the basis of the entire record before him and set out numerous inconsistencies detracting from plaintiff's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). Because the ALJ's determination not to credit plaintiff's subjective complaints is supported by good reasons and substantial evidence, this Court must defer to the ALJ's credibility determination. Goff, 421 F.3d at 793; Vester v. Barnhart, 416 F.3d 886, 889 (8th Cir. 2005); Gulliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).

b.  Objective Evidence of Impairment

As a basis for determining plaintiff's impairments not to be severe, the ALJ found there to be no objective evidence demonstrating that such impairments significantly limited his ability to do basic work activities.  Specifically, the ALJ noted that x-rays showed only mild or slight changes to plaintiff's lumbar spine and, further, that to the extent Dr. Cason observed plaintiff to exhibit limitations during his physical examination, such observations were based only on plaintiff's subjective complaints, which, as discussed above, were not credible.  To the extent the ALJ determined Dr. Cason's findings to be based solely on plaintiff's subjective complaints, such determination was error.

During his physical examination of plaintiff, Dr. Cason noted plaintiff to have limited range of motion, positive straight leg raising on the right at forty-five degrees, and tenderness about the low back and right hip area.  Such findings are objective in nature.  See Driggins v. Bowen, 791 F.2d 121, 124 (8th Cir. 1986) (objective medical evidence includes poor flexation, tenderness in the fourth and fifth vertebrae, limited straight leg raising, and limited range of motion).  Coupling these findings with the results of the x-rays which showed degenerative and other changes of the lumbar spine, and applying a cautious standard at Step 2 of the evaluation process as encouraged by the Eighth Circuit, the undersigned finds there to be sufficient objective medical evidence that the changes to plaintiff's lumbar spine, in combination with plaintiff's hypertension and obesity, constituted

a severe impairment.  The ALJ therefore erred in his determination that no objective evidence supported a finding of a severe impairment.

To the extent the ALJ erred in his evaluation of the evidence at Step 2 of the sequential analysis, such error did not affect plaintiff's substantial rights such that reversal is warranted inasmuch as the ALJ nevertheless continued in the sequential analysis assuming, _arguendo_, that plaintiff had met his burden of establishing a severe impairment.  28 U.S.C. § 2111 (harmless error); _e.g._, _Karlix v. Barnhart_, 457 F.3d 742, 746-47 (8th Cir. 2006) (ALJ's erroneous finding that claimant's impairment did not meet Listing considered harmless where evidence showed that claimant nevertheless failed to meet twelve-month durational requirement).  The undersigned thus continues in reviewing the sequential evaluation conducted by the ALJ.

3.  _Step 3 - Listings of Impairments_

At Step 3 of the sequential evaluation, the ALJ must determine whether the claimant's impairment(s) meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1 (the Listings).  If the claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  In this cause, the ALJ determined plaintiff's impairments not to meet or medically equal Listing 1.04 - Disorders of the Spine, or Listing 4.03 - Hypertensive Cardiovascular Disease.  Further, the ALJ found that plaintiff's obesity did not cause him to meet or equal a Listing.  (Tr. 44-45.)  In his Brief in Support of the

Complaint, plaintiff argues that the combination of his obesity and lumbar spine impairments results in a condition which meets or equals Listing 1.04(A) and that the ALJ erred in failing to consider this combined effect. For the following reasons, the ALJ did not err in his determination.

As acknowledged by the ALJ, the record establishes that plaintiff suffers from obesity. Obesity is no longer, in itself, a listed impairment. Social Security Ruling (SSR) 02-1p. However, the Social Security Regulations specifically instruct that the cumulative effects of obesity must be considered with a claimant's other impairments. As specifically applicable in this case, § 1.00(Q) of the Listings provides for obesity to be considered in cumulation with impairments of the musculoskeletal system:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. 404, Subpt. P, App. 1, § 1.00(Q).

Thus, although there is not a specific Listing for obesity, obesity is a factor to be considered in determining whether a claimant's impairments "meet or equal" a particular Listing. For example, an

individual with obesity "meets" the requirement of a listed impairment if he has another impairment that, by itself, meets the requirements of a Listing, which is not present in this case. SSR 02-1p. A Listing is also met if there is an impairment that, in combination with obesity, meets the Listing's requirements. Id.

As required by the Regulations, and contrary to plaintiff's assertions otherwise, the ALJ here considered the plaintiff's obesity in itself and in combination with plaintiff's other impairments in determining whether the effects of plaintiff's obesity would result in his impairments meeting or equaling the requirements of a Listing. (Tr. 44-45, 46.) Upon such consideration, the ALJ determined that plaintiff's obesity did not have such an effect:

> The record does not document symptoms arising from [obesity] (outside of the claimant's self-serving statement that he has sleep apnea unsupported by any treatment sought for such, or testing documenting such). The record does not document that the claimant's obesity meets or equals any medical listing even when considering SSR 02-1p.

(Tr. 44-45.)

> With respect to the claimant's morbid obesity, it is noted that Dr. Cason reported he weighs 368 pounds. However, there is no persuasive evidence that the claimant's obesity is accompanied by significant degenerative joint disease or degenerative disc disease. . . . [A]ny disorder of the lumbar spine has been "mild" or "slight" in nature. There is no persuasive evidence that such has caused reduced respiratory capacity, skin disorders, edema, huge calluses upon the feet, coronary artery disease, diabetes mellitus, etc. . . . [T]here are no medical records of testing

- 23 -

> documenting sleep apnea. There is no
> persuasive evidence that a treating physician
> has reported that the claimant's obesity
> results in severe symptoms and limitations of
> function, for twelve consecutive months in
> duration, despite compliance with treatment.

(Tr. 46.) (Citation to the record omitted.)

In addition, the ALJ noted that it appeared that plaintiff's

obesity condition had existed for some time and indeed during the

time when plaintiff had engaged in substantial gainful activity.

(Tr. 49.)

To the extent plaintiff claims that consideration of his

obesity condition with his lumbar spine impairment shows him to

meet or equal Listing 1.04(A), substantial evidence on the record

as whole supports the ALJ's decision otherwise. Listing 1.04(A)

provides for disability to be determined where disorders of the

spine, such as herniated nucleus pulposus, spinal arachnoiditis,

spinal stenosis, osteoarthritis, degenerative disc disease, facet

arthritis, or vertebral fracture, result in a compromise of a nerve

root of the spinal cord, with

> [e]vidence of nerve root compression
> characterized by neuro-anatomic distribution
> of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by
> sensory or reflex loss and, if there is
> involvement of the lower back, positive
> straight-leg raising test (sitting and
> supine)[.]

20 C.F.R. 404, Subpt. P, App. 1, § 1.04(A).

The evidence in this cause demonstrates that plaintiff's

impairments do not rise to the level to bring his condition within the requirements of Listing 1.04(A), regardless of whether the source of plaintiff's condition is his obesity, lumbar impairment, or a combination.  Section 1.00 of Appendix 1, which addresses disorders of the musculoskeletal system, states as follows:

>Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment.  The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months.  For the purposes of these criteria, consideration of the ability to perform these activities must be from a physical standpoint alone. . . . We will determine whether an individual can ambulate effectively or can perform fine and gross movements effectively based on the medical and other evidence in the case record, generally without developing additional evidence about the individual's ability to perform the specific activities listed as examples in 1.00B2b(2) and 1.00B2c.
>
>Inability to ambulate effectively means an extreme limitation of the ability to walk, *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. 404, Subpt. P, App. 1, § 1.00(B)(2)(a), (b).

As noted by the ALJ in his decision, plaintiff displayed no motor loss, atrophy or significant muscle weakness during his physical examination with Dr. Cason. Plaintiff exhibited no upper extremity limitations. Further, Dr. Cason noted plaintiff not to experience any sensory or reflex loss, nor any neurological abnormalities. Although Dr. Cason observed plaintiff to walk with a wide gait and to take short steps, plaintiff exhibited no limp and did not require the use of an assistive device for walking. Plaintiff could heel and toe stand and could partially squat. (Tr. 259.) On this evidence of record, it cannot be said that plaintiff suffered functional limitations such that he was unable to ambulate effectively on a sustained basis or to perform fine and gross movements effectively on a sustained basis as required under the relevant Listing(s). To the extent plaintiff argues that his subjective complaints of pain bring his impairments within such parameters, such complaints were properly found not to be credible. See discussion, supra, at Section V.B.2.a.

The ALJ properly addressed plaintiff's obesity and the effect, if any, it had on plaintiff's other impairments. Further, as set out above, substantial evidence supports the ALJ's finding that plaintiff's impairments, considered alone or in combination, failed to meet or equal a listed impairment. The ALJ did not err, therefore, at Step 3 of the sequential evaluation.

4.    *Step 4 – Past Relevant Work*

At Step 4 of the sequential evaluation, the ALJ must establish whether the claimant can perform his past relevant work.

If so, the claimant is not disabled. If not, the ALJ must then continue to Step 5 of the evaluation process and determine whether the claimant can perform other work in the national economy. In this cause, upon determining plaintiff's residual functional capacity (RFC), the ALJ concluded at Step 4 that plaintiff was unable to return to his past relevant work. While the plaintiff does not quarrel with this ultimate finding, he argues that the ALJ erred in his determination of plaintiff's RFC at this step of the process. Plaintiff also argues that finding plaintiff to be unable to perform his past relevant work necessarily establishes his disability. For the following reasons, the ALJ did not err at this step of the sequential evaluation.

At Step 4 of the analysis, the ALJ is required to determine a claimant's RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Residual functional capacity is what a claimant can do despite his limitations caused by his impairments. McGeorge v. Barnhart, 321 F.3d 766, 768 (8th Cir. 2003). Although the disability claimant has the burden to establish his RFC, the ALJ bears the primary responsibility for assessing the RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. Id.; see also Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. §§ 404.1545(a), 404.1546(c).

In this cause, the ALJ determined at Step 4 of the

evaluation that plaintiff had the RFC to perform at least the full range of light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

Plaintiff argues that his complaints of pain demonstrate that he is unable to perform the light work as determined by the ALJ. As discussed supra at Section V.B.2.a, however, plaintiff's subjective complaints were properly found not to be credible. Plaintiff also argues that the ALJ ignored evidence which corroborated his complaints of disabling pain, including evidence obtained from the consulting examiner, x-rays, and a document entitled "Proof of Claimant Disability Document" prepared by the plaintiff in which he summarized the signs, symptoms and medical evidence of his impairments. Plaintiff also contends that the ALJ erred in discounting the evidence obtained from the consulting examiner without good cause. Plaintiff's claims are without merit.

A review of the ALJ's decision shows the ALJ to have thoroughly reviewed and considered the consulting physician's report of examination as well as the results of the x-rays. The ALJ found, however, that such evidence did not support plaintiff's

allegations of disability. With respect to the x-rays performed on November 28, 2006, the ALJ noted them to show nothing more than mild changes of the lumbar spine; that there were no findings demonstrating any significant disease or disorder; and that there were no findings suggesting stenosis, encroachment or impingement. When coupled with Dr. Cason's findings upon physical examination that plaintiff suffered no muscle atrophy or spasm; did not limp when he walked; had no motor, reflex or sensory abnormalities; had 4/5 strength in the lower extremities; normal strength in his upper extremities; and had no reported labored breathing related to pain or shortness of breath upon the performance of exertional activities, the ALJ determined the objective medical evidence not to support a finding that plaintiff suffered a disabling back impairment. In addition, the ALJ noted that other than consultative examinations as ordered by Disability Determinations, at no time did plaintiff seek or obtain any treatment with respect to any of his medical conditions from which, as acknowledged to Dr. Cason, he has suffered for many years. "While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995).

To the extent plaintiff argues that the ALJ improperly discounted Dr. Cason's findings relating to plaintiff's limited range of motion, positive straight-leg raising and tenderness inasmuch as he considered such findings to be subjective in nature, the undersigned agrees that this basis alone would not constitute

good reason to accord Dr. Cason's opinion little weight if Dr. Cason were plaintiff's treating physician. 20 C.F.R. § 404.1527(d)(2); see discussion supra at Section V.B.2.b.[6] However, a review of the ALJ's decision shows him not to have *discounted* the opinion of Dr. Cason, but rather that he determined these specific findings to be insufficient to establish a disability, especially when considered in conjunction with objective x-ray evidence demonstrating plaintiff's lumbar condition to be "mild" and objective clinical diagnostic testing which revealed no significant findings to support plaintiff's allegation of functional limitations. (Tr. 49, 50.) Weighing of the evidence is a function of the ALJ. Masterson, 363 F.3d at 736.

The ALJ thus did not ignore the medical evidence of record, but instead thoroughly reviewed such evidence and accorded it the weight it was due. The ALJ also considered plaintiff's subjective complaints, including those outlined in plaintiff's "Proof" document, and properly found such complaints not to be credible. To the extent plaintiff contends that the ALJ failed to obtain additional medical evidence to determine whether plaintiff's physical impairments could produce the pain of which plaintiff complained, the ALJ properly observed in his written decision that an additional consultative examination was indeed ordered but that plaintiff refused to attend without good reason. A claimant who, without good reason, fails or refuses to take part in an arranged

---

[6]Notably, Dr. Cason is not plaintiff's treating physician and instead examined him once at the request of Disability Determinations.

consultative examination may be found not to be disabled on account of his failure to attend such examination. 20 C.F.R. § 404.1518(a). At the administrative level, the plaintiff reported to the Social Security Administration that he would not attend the additional consultative examination inasmuch as it was not necessary, arguing that there was already sufficient information in the record upon which a finding of disability could be made. It cannot be said that the failure to obtain additional medical evidence constituted error on the part of the ALJ when the ALJ indeed provided an opportunity to develop such additional evidence and such opportunity was rejected by plaintiff.

Finally, plaintiff argues that the ALJ's conclusion at Step 4 of the evaluation process that plaintiff could not perform his past relevant work in itself establishes plaintiff's disability. Contrary to plaintiff's assertion, however, a finding that a claimant is unable to perform his past relevant work does not dictate a finding that he is conclusively disabled. Instead, once such a finding is made, the claimant is considered to have satisfied his burden of demonstrating that he is unable to do past relevant work, and the burden of proof then shifts to the Commissioner to prove that other work exists in substantial numbers in the national economy that the claimant is able to perform. Eichelberger, 390 F.3d at 591. Accordingly, the ALJ properly continued to Step 5 of the sequential analysis upon finding that plaintiff could not perform his past relevant work.

Therefore, on the claims raised by plaintiff challenging

the manner by which the ALJ determined his RFC at Step 4 of the sequential evaluation, such claims are without merit and should be denied.

5.    *Step 5 – Other Work in the National Economy*

At Step 5 of the sequential analysis, the ALJ bears the burden of proving that the claimant has the RFC to perform other kinds of work and that other work exists in substantial numbers in the national economy that the claimant is able to perform. Eichelberger, 390 F.3d at 591.  In this cause, upon consideration of plaintiff's age, education, work experience, and RFC, the ALJ determined that the Medical-Vocational Guidelines supported a finding that there existed a significant number of jobs in the national economy that plaintiff could perform.  The ALJ thus found plaintiff not to be disabled.

Plaintiff argues that given his significant non-exertional impairments of pain and obesity, the ALJ erred by relying on the Guidelines to find non-disability and should have instead elicited the testimony of a vocational expert.  For the following reasons, the ALJ did not err in his reliance on the Guidelines.

The Commissioner's burden to show that there exist jobs in the national economy that the claimant is capable of performing may be met by reference to the Guidelines if the claimant suffers only from exertional impairments.  Bolton v. Bowen, 814 F.2d 536, 537 n.3 (8th Cir. 1987).  Use of the Guidelines is also permissible where non-exertional impairments exist but "do not diminish or

significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities[.]" <u>Ellis v. Barnhart</u>, 392 F.3d 988, 996 (8th Cir. 2005); <u>McGeorge</u>, 321 F.3d at 768; <u>Lucy v. Chater</u>, 113 F.3d 905, 908 (8th Cir. 1997).  Where an ALJ properly discredits non-exertional impairments, the use of the Guidelines is permissible.  <u>See</u> <u>Patrick v. Barnhart</u>, 323 F.3d 592, 596 (8th Cir. 2003).  <u>See also</u> <u>Ellis</u>, 392 F.3d at 997; <u>McGeorge</u>, 321 F.3d at 769 (at Step 5, ALJ relies on RFC determination properly limited to only the impairments and limitations found to be credible based on evaluation of entire record).

The Guidelines are not controlling, however, where a non-exertional impairment significantly diminishes the claimant's RFC. In such circumstance, the ALJ must call a vocational expert or produce other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's abilities.  <u>Ellis</u>, 392 F.3d at 996; <u>Shannon</u>, 54 F.3d at 488; <u>Harris v. Shalala</u>, 45 F.3d 1190, 1194 (8th Cir. 1995).  "Where a claimant suffers from a nonexertional impairment which substantially limits his ability to perform gainful activity, the [Guidelines] cannot take the place of expert vocational testimony."  <u>Foreman v. Callahan</u>, 122 F.3d 24, 26 (8th Cir. 1997) (internal quotations marks and citation omitted).

a.  <u>Pain</u>

Plaintiff claims the ALJ failed to properly consider his non-exertional impairment of pain and should have elicited testimony from a vocational expert regarding the extent to which

plaintiff could perform work-related activities given his pain.

Pain is a non-exertional impairment. Shannon, 54 F.3d at 488. As discussed supra at Section V.B.2.a, however, the ALJ here properly discredited plaintiff's complaints of pain and thus excluded from the RFC determination the limitations allegedly experienced by plaintiff on account of such pain. Such exclusion was proper. Ellis, 392 F.3d at 997. Inasmuch as plaintiff's alleged limitations caused by his discredited complaints of pain were properly excluded from the ALJ's RFC determination, the ALJ did not err in failing to call a vocational expert to provide testimony regarding the extent to which plaintiff's RFC was further limited by pain. Patrick, 323 F.3d at 596; Ellis, 392 F.3d at 997; McGeorge, 321 F.3d at 769

b. Obesity

Obesity is a non-exertional impairment. See Clark, 28 F.3d at 831. In this cause, however, the ALJ properly noted that the record appeared to show that plaintiff's obesity had existed for some time and "even while [he] engaged in substantial gainful activity." (Tr. 49.) Indeed, a review of the record shows plaintiff to have reported to Dr. Cason in November 2006 that he had been heavy all of his life. As such, it cannot be said that plaintiff's non-exertional impairment of obesity "substantially limit[ed] his ability to perform gainful activity" where the record shows plaintiff to have performed gainful activity with such impairment and at a level exceeding the exertional requirements of light work, which is the level of work the ALJ found plaintiff

currently able to perform.[7]   Therefore, the ALJ did not err in failing to call a vocational expert to provide testimony regarding the extent to which plaintiff's RFC was further limited by obesity.

## VI.   Conclusion

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's final determination upon concluding the five-step sequential analysis that plaintiff is not disabled is supported by substantial evidence on the record as a whole.   Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may exist in the record that would have supported a contrary outcome or because another court could have decided the case differently.   Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).   Accordingly, the decision of the Commissioner denying plaintiff's claim for benefits should be affirmed.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that plaintiff's Complaint be dismissed with prejudice.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **November 24, 2008**.  Failure to timely file objections may result in

---

[7]Plaintiff's past relevant work required him to lift weight ranging from twenty-five to 100 pounds or more.   The exertional level of such work ranges from medium to very heavy.   20 C.F.R. § 404.1567.

waiver of the right to appeal questions of fact.  <u>Thompson v. Nix</u>,
897 F.2d 356, 357 (8th Cir. 1990).


_____
UNITED STATES MAGISTRATE JUDGE


Dated this  _12th_  day of November, 2008.